J-A08037-18

2018 PA Super 189

| | | |
|---|---|---|
| BRENDA DAVIS, ADMINISTRATRIX OF THE ESTATE OF RUTH ROBERTS, DECEASED, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CENTER MANAGEMENT GROUP, LLC, 10400 ROOSEVELT OPERATING, LLC D/B/A ST. JOHN NEUMANN CENTER FOR REHABILITATION AND HEALTHCARE, CATHOLIC HEALTH SERVICES, LLC, 10400 ROOSEVELT INVESTMENTS, LLC, 10400 ROOSEVELT LIC, LLC, 10400 ROOSEVELT LOT, LLC, 10400 ROOSEVELT PARTNERS LLC, 10400 ROOSEVELT REALTY, LLC, 10400 ROOSEVELT VENTURES, LLC, CHARLES-EDOUARD GROS, MOSHE ROSENBERG, CAROLYN BOEHM, ST. JOHN NEUMANN NURSING HOME, AND ARCHDIOCESE OF PHILADELPHIA D/B/A CATHOLIC HEALTH CARE SERVICES, | : | |
| | : | |
| BRENDA DAVIS, ADMINISTRATRIX OF THE ESTATE OF RUTH ROBERTS, DECEASED, | : | |
| v. | : | |
| | : | |
| GERMANTOWN HOME AND NEW COURTLAND ELDER SERVICES, INC., | : | |
| | : | |
| APPEAL OF: ARCHDIOCESE OF PHILADELPHIA D/B/A CATHOLIC HEALTH CARE SERVICES AND ST. JOHN NEUMANN NURSING HOME | : | No. 452 EDA 2017 |

Appeal from the Order January 24, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): July Term, 2016 No. 00108
November Term, 2015 No. 03740

| | | |
|---|---|---|
| BRENDA DAVIS, ADMINISTRATRIX OF THE ESTATE OF RUTH ROBERTS, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

DECEASED,                                    :
                                             :
                    v.                       :
                                             :
GERMANTOWN HOME AND NEW                       :
COURTLAND ELDER SERVICES, INC.,               :
                                             :
BRENDA DAVIS, ADMINISTRATRIX OF               :
THE ESTATE OF RUTH ROBERTS,                   :
DECEASED,                                     :
                                             :
                    v.                       :
                                             :
CENTER MANAGEMENT GROUP, LLC,                 :
10400 ROOSEVELT OPERATING, LLC                :
D/B/A ST. JOHN NEUMANN CENTER                 :
FOR REHABILITATION AND                        :
HEALTHCARE, CATHOLIC HEALTH                   :
SERVICES, LLC, 10400 ROOSEVELT                :
INVESTMENTS, LLC, 10400 ROOSEVELT             :
LIC, LLC, 10400 ROOSEVELT LOT, LLC,           :
10400 ROOSEVELT PARTNERS LLC,                 :
10400 ROOSEVELT REALTY, LLC,                  :
10400 ROOSEVELT VENTURES, LLC,                :
CHARLES-EDOUARD GROS, MOSHE                   :
ROSENBERG, CAROLYN BOEHM, ST.                 :
JOHN NEUMANN NURSING HOME, AND                :
ARCHDIOCESE OF PHILADELPHIA                   :
D/B/A CATHOLIC HEALTH CARE                    :
SERVICES,                                     :
                                             :
APPEAL OF: CENTER MANAGEMENT                  :
GROUP, LLC, 10400 ROOSEVELT                   :
OPERATING, LLC D/B/A ST. JOHN                 :
NEUMANN CENTER FOR                            :
REHABILITATION AND HEALTHCARE,                :
CATHOLIC HEALTH SERVICES, LLC,                :
10400 ROOSEVELT REALTY, LLC,                  :
10400 ROOSEVELT LOT, LLC,                     :
CHARLES-EDOUARD GROS, MOSHE                   :
ROSENBERG, AND CAROLYN BOEHM                  :          No. 562 EDA 2017

Appeal from the Order Entered January 24, 2017
in the Court of Common Pleas of Philadelphia County

- 2 -

J-A08037-18

BEFORE:    PANELLA, LAZARUS, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:            **FILED JUNE 28, 2018**

In these consolidated appeals, Archdiocese of Philadelphia d/b/a Catholic Health Care Services and St. John Neumann Nursing Home (collectively, AOP) and Center Management Group, LLC, 10400 Roosevelt Operating LLC d/b/a St. John Neumann Center for Rehabilitation and Healthcare, Catholic Health Services, LLC, 10400 Roosevelt Realty, LLC, 10400 Roosevelt Lot, LLC, Charles-Edouard Gros, Moshe Rosenberg, and Carolyn Boehm (collectively, CMG)[1] appeal from the January 24, 2017 orders overruling their respective preliminary objections in the nature of a petition to compel arbitration.[2] We vacate the orders and remand for proceedings consistent with this opinion.

---

*Retired Senior Judge assigned to the Superior Court.

[1] We refer to AOP and CMG collectively as Appellants.

[2] The instant case stems from an action filed by Davis as administratrix of the estate of Ruth Roberts (Decedent), filed at docket number 00108 of the July Term, 2016. Davis had filed a similar complaint against Germantown Home and New Courtland Elder Services, Inc. at docket number 03740 of the November Term, 2015. On January 19, 2017, the trial court granted Davis's request to consolidate No. 00108 and No. 03740 for purposes of discovery and trial. The court designated No. 00108 as the lead case. Germantown Home and New Courtland Elder Services, Inc. filed an answer to Davis's complaint instead of preliminary objections; that action is still pending. Germantown Home and New Courtland Elder Services, Inc. are not participating in this appeal.

- 3 -

Decedent passed away on October 31, 2015. This action involves claims of negligence relating to care rendered to Decedent during her stay in 2014 and 2015 as a patient at a skilled nursing facility, St. John Neumann Nursing Home (St. John Neumann), which was owned and operated first by AOP, and later, by CMG.

Decedent was admitted to St. John Neumann on May 5, 2014. She remained there until she was hospitalized for several weeks in March 2015. On April 3, 2015, Decedent was re-admitted to St. John Neumann. Upon Decedent's re-admission to St. John Neumann, Decedent's daughter, Davis, signed an agreement relating to Decedent's stay at St. John Neumann (Admission Agreement) which, *inter alia*, details the nature of the services provided and the resident's financial obligations.[3] Prior to Davis's signing of the Admission Agreement, Decedent had granted Davis certain powers pursuant to a written general durable power of attorney dated February 25, 2015 (Power of Attorney).[4]

---

[3] There is no indication in the record whether or not Decedent or Davis signed a similar Admission Agreement upon Decedent's first admission. In light of our disposition today, we need not decide whether the Arbitration Clause was limited to acts or omissions occurring after the date it was signed, or whether it required the parties to arbitrate disputes regarding acts or omissions occurring prior to Davis's signing of the Admission Agreement.

[4] By its terms, the Power of Attorney instructed the principal to initial in front of (N) and to "ignore" the lines in front of (A) through (M) if the principal wished to grant all of the powers listed in (A) through (M) to the agent. Power of Attorney, 2/25/2015, at 2 (unnumbered; numbering supplied). If the principal wished to grant one or more but fewer than all of the powers,
*(Footnote Continued Next Page)*

The Admission Agreement purports to make the following parties to the agreement: St. John Neumann, Decedent (known in the agreement as "Resident"), and Davis as Decedent's "legal representative," (known in the agreement as "Responsible Person"). Admission Agreement, 4/3/2015, at 1. Decedent did not sign the Admission Agreement. Davis signed on the line designated for Decedent's "Responsible Person."[5]

---

*(Footnote Continued)* ───────────

the Power of Attorney instructed the principal to initial in front of each specific power he/she wanted to grant. *Id.* To withhold a power, the Power of Attorney instructed the principal to refrain from initialing in front of the power. *Id.*

"R.R." is handwritten in front of (N), indicating that Decedent wished to grant Davis all of the listed powers at (A) through (M). *Id.* at 4. This would appear to include power (I), which permits the agent to "defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and all respects as my Agent shall deem proper." *Id.* at 3. However, contrary to the instructions regarding the method to grant all powers in (N), there is difficult-to-read writing that may be Decedent's initials in front of power (K). *Id*.

Although Davis asserted her lack of authority in her response to Appellants' preliminary objections before the trial court, she does not argue that she lacked authority to enter into the Admission Agreement in her brief to this Court. Based upon our disposition today, we need not decide whether Davis had such authority.

[5] Davis also signed a second agreement (Responsible Person Agreement), the purpose of which is "to facilitate the provision of care to [Decedent]." Responsible Person Agreement, 4/3/2015, at 1. The parties to the Responsible Person Agreement are St. John Neumann and Davis. *Id.* Decedent did not sign the Responsible Person Agreement. Essentially, the Responsible Person Agreement obligates the Responsible Person to fulfill the duties of the Resident under the Admission Agreement, most of which are
*(Footnote Continued Next Page)*

Relevant to this appeal, the Admission Agreement contains an arbitration clause (Arbitration Clause), which requires the parties to submit to arbitration all disputes relating to the Admission Agreement, with the exception of guardianship proceedings and disputes involving amounts in controversy less than $8,000. *Id.* at 16-20. The Arbitration Clause indicates specifically that it applies to disputes relating to personal injury or medical malpractice. *Id.* at 18.

On July 5, 2016, Davis, in her capacity as administratrix of Decedent's estate, filed a praecipe for a writ of summons against Appellants. The writ of summons was issued and served upon Appellants. On November 9, 2016, Appellants filed a joint petition to compel arbitration, which alleged that Decedent's estate was bound to arbitrate any disputes pursuant to the Arbitration Clause. Davis filed an answer to the petition to compel on November 29, 2016, arguing that the case should remain in the court of common pleas. The following day, Davis filed a complaint against Appellants, alleging various negligence claims relating to the care Decedent received while at St. John Neumann.

On December 6, 2016, the trial court denied Appellants' petition to compel without prejudice, holding that Appellants could not petition the court to compel arbitration in response to a writ of summons. Trial Court

*(Footnote Continued)* ───────────────

financial in nature, and subjects the Responsible Person to liability for failure to do so.

J-A08037-18

Order, 12/6/2016, at 1 ("A plaintiff must first file a formal [c]omplaint, after which a defendant may move to compel arbitration following the procedures set forth in Pa.R.C.P. 1028.").[6] The court further specified that "[Appellants]

_____

[6] The trial court based its holding upon *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063 (3d. Cir. 1995), wherein the United States Court of Appeals for the Third Circuit held that because a writ of summons in this Commonwealth is not a pleading, is silent as to the claims asserted by a plaintiff, and does not require the defendant to take any responsive action, the plaintiff's obtaining a writ is not evidence of a refusal to arbitrate, and thus did not start the clock on the statute of limitations under the Federal Arbitration Act. We question whether this case applied to the situation presented to the trial court. The Third Circuit is correct that in Pennsylvania, a writ of summons is not a pleading, and the Pennsylvania Rules of Civil Procedure do not permit a party to file preliminary objections to a writ of summons. *Monaco v. Montgomery Cab Co.*, 208 A.2d 252, 255 (Pa. 1965). We agree with the Third Circuit that filing a praecipe for a writ of summons alone does not constitute a refusal to arbitrate, and the opposing party is not compelled to take responsive action upon service of the writ of summons. Nevertheless, a preliminary objection pursuant to Pa.R.C.P. 1028(a)(6) is not the only mechanism to attempt to compel another party to arbitrate; courts are required to consider applications to compel arbitration pursuant to subsection 7304(a) of the Uniform Arbitration Act. That section provides:

> On application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied.

42 Pa.C.S. § 7304(a). *See also* 42 Pa.C.S. § 7318 ("The making of an agreement described in section 7303 (relating to validity of agreement to arbitrate) providing for arbitration in this Commonwealth confers jurisdiction on the courts of this Commonwealth to enforce the agreement under this subchapter and to enter judgment on an award made thereunder.").

*(Footnote Continued Next Page)*

shall have [20] days from the date of this order to file a [p]etition in response to [Davis's] formal [c]omplaint." ***Id.***

Appellants each filed preliminary objections to the complaint on December 27, 2016. *Inter alia*, the preliminary objections were filed in the nature of a petition to compel arbitration pursuant to Pa.R.C.P. 1028(a)(6), and sought to enforce the Arbitration Clause in the Admission Agreement. Davis filed responses in opposition to each set of Appellants' preliminary objections, asserting, *inter alia*, that the Arbitration Clause was "unenforceable, void, voidable, invalid, and/or revocable on numerous grounds…." Davis's Responses, 1/17/2017, at 2. Davis included a laundry list of various grounds, including the three grounds Davis discusses in her appellee brief: (1) that the Arbitration Clause is a contract of adhesion and is unconscionable; (2) that the Arbitration Clause violates 42 U.S.C. § 1396r(c)(5)(iii) (prohibiting nursing homes from "charg[ing], solicit[ing], accept[ing,] or receiv[ing] … any other consideration as a precondition of admit[ance]") because it required Davis to waive her right to a jury trial as a condition of admittance in addition to payments provided by

*(Footnote Continued)* ────────────

Thus, while the obtaining of a writ of summons alone does not constitute a refusal to arbitrate, if Appellants had some other basis to demonstrate that Davis refused to arbitrate, the lack of a complaint at that junction did not render Appellants' petition to compel arbitration premature, as the trial court could have considered it pursuant to subsection 7304(a) of the Uniform Arbitration Act. Nevertheless, Appellants do not contest the trial court's December 6, 2016 order on appeal, and at any rate, Davis did file eventually a complaint to which Appellants filed preliminary objections, as discussed *infra*.

- 8 -

Medicaid/Medicare; and (3) that the Arbitration Clause is void due to the doctrine of impracticability because the non-arbitrable Wrongful Death Act claim should be consolidated with the Survival Act claims.[7] *Id.* at 3-5; Davis's Brief at 9-18.

Meanwhile, Appellants filed a motion for reconsideration of the December 6, 2016 order declining to compel arbitration due to Davis's not having filed a complaint. The trial court denied Appellants' motion for reconsideration on January 4, 2017. In the order denying the motion, the trial court clarified that it had issued its December 6, 2016 order solely due to Appellants' purported procedural error in filing prematurely a petition to compel, and the issue of arbitrability of the dispute was preserved until Appellants cured the errors in procedure. Trial Court Order, 1/4/2017, at 1. The trial court noted that Appellants had filed preliminary objections raising the issue of arbitration in response to Davis's formal complaint, which preserved their objection. *Id.* As such, the trial court expressly held that Pa.R.A.P. 311(g)(1)(iv) ("Failure to file an appeal from an interlocutory order refusing to compel arbitration, appealable under 42 Pa.C.S. § 7320(a)(1) and subparagraph (a)(8) of this rule, shall constitute a waiver of all objections to such an order.") did not apply. *Id.*

---

[7] We note our Supreme Court has rejected Davis's impracticability argument. *See Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490 (Pa. 2016).

On January 24, 2017, the trial court[8] issued the orders in question overruling Appellants' preliminary objections in the nature of petitions to compel arbitration. Trial Court Order, 1/24/2017, at 1. The trial court did not explain its ruling and ordered Appellants to file answers to the complaint within 20 days from the date of the orders. *Id.*

Appellants timely filed notices of appeal. The trial court did not order Appellants to file a concise statement of errors complained of on appeal, but did issue an opinion pursuant to Pa.R.A.P. 1925(a).

Appellants ask this Court to resolve three issues on appeal.[9] First, Appellants disagree with the trial court's conclusion in its Rule 1925(a) opinion that their claims are untimely, waived, and/or moot. AOP's Brief at 5; CMG's Brief at 8. Second, Appellants contend that the trial court erred by refusing to compel arbitration of all claims Davis is making on behalf of Decedent and her estate, because such claims are (a) subject to the Arbitration Clause in the Admission Agreement executed by Davis on Decedent's behalf pursuant to a valid power of attorney and (b) within the scope of the Arbitration Clause. *Id.* Finally, Appellants argue that the trial court should not have overruled their preliminary objections because Davis failed to raise a dispute of material fact or legal argument precluding

---

[8] Whereas the Honorable Denis P. Cohen issued the December 6, 2016, and January 4, 2017 orders, the Honorable Angelo Foglietta issued the January 24, 2017 orders.

[9] We have reordered Appellants' issues for ease of disposition.

- 10 -

enforcement of the Arbitration Clause in response to Appellants' preliminary objections. *Id.* Alternatively, Appellants argue the trial court erred by failing to take evidence in accordance with Pa.R.C.P. 1028(c)(2) prior to overruling the preliminary objections. *Id.*

"[O]ur review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 49–50 (Pa. Super. 2017). "We employ a two-part test to determine whether the trial court should have compelled arbitration: [(1)] whether a valid agreement to arbitrate exists, and [(2)] whether the dispute is within the scope of the agreement." *Washburn v. Northern Health Facilities, Inc.*, 121 A.3d 1008, 1012 (Pa. Super. 2015).

Before we address the merits of Appellants' issues, we first address whether we have jurisdiction over this appeal. The trial court contends this Court should quash this appeal because the orders appealed from are interlocutory. Trial Court Opinion, 9/18/2017, at 5-6. While the orders are indeed interlocutory, "[a]n order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to 42 Pa.C.S.[] § 7320(a) and Pa.R.A.P. 311(a)(8)." *Petersen v. Kindred Healthcare, Inc.*, 155 A.3d 641, 644 n.1 (Pa. Super.

- 11 -

2017). *See* Pa.R.A.P. 311(a)(8) ("An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from … [a]n order that is made final or appealable by statute … even though the order does not dispose of all claims and of all parties."); 42 Pa.C.S. § 7320(a)(1), (5) ("An appeal may be taken from … [a] court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration)."). The trial court states that it did not refuse to compel arbitration, as "Appellants would have been free to file a petition or motion on this issue at a later time and without any prejudice to them." Trial Court Opinion, 9/18/2017, at 6. However, not only did nothing about the trial court's order indicate that it entered the order without prejudice, the order plainly denied Appellants' application to compel arbitration (made in the form of preliminary objections).[10] Thus, we decline to quash these appeals.

Next, the trial court requests that this Court dismiss Appellants' appeals because the court granted Appellants permission to re-file their petition to remove the matter to arbitration, but they failed to do so. Trial Court Opinion, 9/18/2017, at 4. However, the fundamental flaw in the trial court's reasoning is that Appellants did renew their request to compel arbitration – they just did so in the form of preliminary objections instead of

---

[10] As such, Appellants had to file an appeal to preserve their objections to the orders. *See* Pa.R.A.P. 311(g)(1)(iv) ("Failure to file an appeal from an interlocutory order refusing to compel arbitration, appealable under 42 Pa.C.S. § 7320(a)(1) and subparagraph (a)(8) of this rule, shall constitute a waiver of all objections to such an order.").

petition form. This is permissible under the rules. **See** Pa.R.C.P. 1028(a)(6) (permitting preliminary objections based upon an "agreement for alternative dispute resolution;" official note to rule states that "[a]n agreement to arbitrate may be asserted by preliminary objection or by petition to compel arbitration pursuant to the Uniform Arbitration Act, 42 Pa.C.S. § 7304, or the common law, 42 Pa.C.S. § 7342(a)."). Accordingly, we will not dismiss these appeals on this basis.

The trial court also urges this Court to dismiss the appeals based upon its contention that Appellants rendered the appeals moot by filing an answer to the complaint after they filed notices of appeal. Trial Court Opinion, 9/18/2017, at 4, 7-8. According to the trial court, Appellants waived their right to rely upon the Arbitration Clause by continuing through the judicial system. **Id.** at 7. However, Appellants have not done so voluntarily. As they point out, the trial court ordered Appellants to file an answer within twenty days or risk judgment being entered against them. **See** Trial Court Order, 1/23/2017, at 1. Appellants promptly filed notices of appeal, as well as a joint motion for a stay, which was still pending at the time their answers to the complaint were due. "[A] waiver of a right to proceed to arbitration pursuant to the term of a contract providing for binding arbitration should not be [inferred lightly]…." **Kwalkick v. Bosacco**, 478 A.2d 50, 52 (Pa. Super. 1984). "Moreover, the mere filing of … an answer without resulting prejudice to the objecting party will not justify a finding of

waiver of the right to arbitration." *Id.* Therefore, we decline to dismiss the appeal under these circumstances. *See Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1278 (Pa. Super. 2004) ("Likewise, since Appellant consistently has asserted its right to arbitration and only used the judicial system to preserve that right and protect its … interests, we conclude that it did not voluntarily avail itself of the regular channels of judicial process under the aforementioned standard.").

Finally, the trial court contends that because Appellants did not file their preliminary objections within 20 days of service of the complaint, their filing was untimely. Trial Court Opinion, 9/18/2017, at 2. We disagree. As described *supra*, the December 6, 2016 order, which denied Appellants' initial petition to compel arbitration without prejudice, explicitly provided Appellants with 20 days from the date of the order in which to file a petition to compel arbitration in response to Davis's complaint. Appellants complied with that timeframe by filing such a petition in the form of preliminary objections pursuant to Pa.R.C.P. 1028(a)(6) within 20 days of the December 6, 2016 order. Thus, to the extent the trial court denied the preliminary objections based upon their purported untimeliness, it abused its discretion.

We turn now to the merits. The essence of Appellants' arguments is that the trial court abused its discretion by declining to decide the issue of arbitrability at the preliminary objections stage of the proceedings. In its 1925(a) opinion, the trial court explained that in addition to its

determination that the preliminary objections were filed late, it overruled the objections because the issue of "[w]hether a valid agreement exists between the parties in this particular case is a question of fact that is well beyond the scope of the [p]reliminary [o]bjections."[11]  Trial Court Opinion, 9/18/2017, at 7.  It elaborated on its reasoning as follows.

> [G]iven the underlying factual scenario of the manner in which the agreement to arbitrate was entered into, [the trial] court was unable to determine from [Davis's] complaint alone whether the agreement to arbitrate was in fact a valid agreement which could be determined through preliminary objections.
>
> Clearly, [the trial] court's January 23, 2017 order did not prevent or preclude any party from seeking such relief through the filing of a petition to compel arbitration to proceed in that manner or once discovery was conducted on that specific issue in order for [the trial] court to determine the validity of the arbitration agreement.[12]  In light of the blanket assertion of the requirement to arbitrate by Appellants, [the trial] court had nothing more to rely upon which would have warranted sustaining the preliminary objections in Appellant[s'] favor.  This case was not comparable to a basic contract case where the parties thereto would have been on equal footing in negotiating terms and conditions of the contract[,] which would then provide a clear right to remand to private arbitration.  In this case, it involves much more tha[n] simply application of the law to negotiated terms.  It involves a multipage (24 pages) Admission Agreement to Appellants' facility that was signed by [] Davis, as

---

[11] Based on the language of the Arbitration Clause, the trial court determined that the parties' dispute fell within the scope of the Arbitration Clause.  **Id.** at 7.  Davis does not appear to challenge this ruling.

[12] As discussed *supra*, this assertion is erroneous, as nothing about the trial court's order indicated that it entered the order without prejudice.  Furthermore, because the order plainly denied Appellants' application to compel arbitration (made in the form of preliminary objections), Appellants needed to file an immediate appeal to avoid waiving their objections to the order pursuant to Pa.R.A.P. 311(g)(1)(iv).

the responsible party of the patient, [Decedent]. Aside from the signed [Admission A]greement, [the trial] court had nothing more to rely upon at the preliminary objections stage. A proper and more analytical determination would have been and could have been made upon motion after discovery on the issue.

Trial Court Opinion, 9/18/2017, at 2-3 (unnecessary capitalization omitted).

We agree with Appellants that the trial court's failure to determine whether the dispute was arbitrable at the preliminary objection stage was an abuse of discretion. "Our decisional law has made clear that the issue of whether a party agreed to arbitrate a dispute is a threshold, jurisdictional question that must be decided by the court." ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 654 (Pa. Super. 2013) (internal citations omitted). When presented with a petition to compel arbitration, the trial court must determine whether an agreement to arbitrate the controversy exists. ***Smith v. Cumberland Grp., Ltd.***, 687 A.2d 1167, 1171 (Pa. Super. 1997). "If a valid arbitration agreement exists between the parties and appellants' claim is within the scope of the agreement, the controversy must be submitted to arbitration."[13] ***Id.***

---

[13] Our Supreme Court has instructed courts to "consider questions of arbitrability with a healthy regard for the federal policy favoring arbitration." ***Taylor***, 147 A.3d at 509 (citations and quotation marks omitted). Section 2 of the Federal Arbitration Act binds state courts to compel arbitration of claims subject to an arbitration agreement. ***Id.*** (citing 9 U.S.C. § 2 (providing that arbitration agreements "shall be valid, irrevocable, and enforceable")). "The only exception to a state's obligation to enforce an arbitration agreement is provided by the savings clause, which permits the application of generally applicable state contract law defenses such as fraud,
*(Footnote Continued Next Page)*

Moreover, Pa.R.Civ.P. 1028(c)(2) states that the trial court "shall determine promptly all preliminary objections. If an issue of fact is raised, the court **shall** consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2) (emphasis added). Furthermore, preliminary objections in the nature of a petition to compel arbitration filed pursuant to Pa.R.C.P. 1028(a)(6) cannot be determined from facts of record. **See id.**, Note ("Preliminary objections raising an issue under subdivision (a)(1), (5), (6), (7) or (8) cannot be determined from facts of record. In such a case, the preliminary objections must be endorsed with a notice to plead or no response will be required under Rule 1029(d)."). "In other words, a dispute [raising an issue under Rule 1028(a)(1), (5), (6), (7) or (8)] cannot be resolved by reference to facts pled in the complaint. Additional evidence is required." **Trexler v. McDonald's Corp.**, 118 A.3d 408, 412 (Pa. Super. 2015) (stating that the trial court properly permitted the parties to conduct discovery after receiving preliminary objections and an answer thereto raising a question of fact).

In their preliminary objections, Appellants contended that a valid agreement to arbitrate exists, and attached a copy of the agreement along with the Power of Attorney they claim established Davis's authority to bind Decedent. After receiving Appellants' preliminary objections, each set of

*(Footnote Continued)* ───────────────
duress, or unconscionability, to determine whether a valid contract exists." **Id.**

- 17 -

which was endorsed with a notice to plead, Davis responded by denying that a valid enforceable agreement to arbitrate existed. Davis's Responses, 1/17/2017, at 2-3. Davis based her denials upon various state law contract defenses, including unconscionability. Pursuant to the aforementioned law, the trial court was required to determine, at the time it ruled upon Appellants' preliminary objections, whether the parties had a valid agreement to arbitrate. Moreover, had the trial court required additional facts to make such a determination, it should have considered "evidence by deposition or otherwise." Pa.R.C.P. 1028(c)(2). Because the trial court erred in failing to determine at the outset whether a valid agreement to arbitrate exists, questions of law and fact remain outstanding and unaddressed by the trial court. Accordingly, we vacate the trial court's orders and remand this matter for the trial court to consider Appellants' preliminary objections consistent with Pa.R.C.P. 1028(c)(2), and to determine whether a valid agreement to arbitrate exists between the parties.

Orders vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>6/28/18</u>